UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
FIRLANDO RIVERA                 )
                                )
        v.                      )    C.A. No. 14-23 WES
                                )
ASHBEL T. WALL                  )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Petitioner Firlando Rivera has filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1). The State has filed a motion to dismiss the Petition (ECF No. 19), to which Rivera filed a response in opposition (ECF No. 29). The Court has determined that no hearing is necessary. For the reasons that follow, the Motion to Dismiss is GRANTED and the Petition is DENIED and DISMISSED.

I.  Background and Travel

On October 19, 1999, following a six-day trial, Rivera was convicted by a jury of first degree murder and related firearms charges and was found to be a habitual offender. He filed a motion for a new trial, which was denied on October 27, 1999. Rivera was sentenced on February 3, 2000, to life in prison for the murder conviction, two concurrent ten year sentences and one suspended ten-year sentence for the firearms offenses, and a consecutive term of 20 years, non-parolable, as a habitual offender. Rivera

timely appealed the conviction, as well as the denial of his motion for new trial, but in a decision issued on November 19, 2003, the Rhode Island Supreme Court affirmed the lower court's judgment. Rivera did not seek further review.

Thereafter, Rivera filed both a motion for sentence reduction and an application for post-conviction review in the Superior Court. The motion for sentence reduction was denied on July 21, 2004, and the post-conviction petition was denied, after a two-day hearing, on February 11, 2011. Rivera appealed the latter denial, and on January 14, 2013, the Rhode Island Supreme Court again affirmed the lower court's decision.

On January 13, 2014, Rivera, through counsel, filed the instant Petition.[1] The State initially filed a motion to dismiss (ECF No. 4) ("First Motion to Dismiss") based on timeliness grounds on February 21, 2014. Rivera filed a response in opposition (ECF No. 10) to the First Motion to Dismiss on August 4, 2014. The State subsequently filed a reply (ECF No. 14), to which Rivera filed a further response (ECF No. 17). In an Order (ECF No. 18) dated September 23, 2015, the Court denied the First Motion to

---

[1] The Petition consists of the main document and two attachments (ECF Nos. 1-1, 1-2) ("Att.") containing additional grounds and exhibits.

Dismiss without prejudice and directed the State to respond to the Petition on the merits.

The State filed a second motion to dismiss (ECF No. 19) ("Second Motion to Dismiss") on October 30, 2015, followed by an appendix of exhibits (ECF No. 20) ("State's Ex."). On October 8, 2016, Rivera filed a response in opposition (ECF No. 29) ("Opposition") to the Second Motion to Dismiss as well as a supplemental memorandum (ECF No. 30).

## II. Law

### A. Section 2254

Section 2254 provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### B. Exhaustion and Procedural Default

The exhaustion doctrine, codified at 28 U.S.C. 2254(b)(1),[2] "is principally designed to protect the state courts' role in the

---

[2] Section 2254(b)(1) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) the applicant has exhausted the remedies available in the courts of the State; or

enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution." Rose v. Lundy, 455 U.S. 509, 518 (1982)(alteration in original)(internal citations and quotation marks omitted). Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[.]" Id. Thus, the Rose Court cautioned litigants, "before you bring any claims to federal court, be sure that you first have taken each one to state court." Id. at 520; see also O'Sullivan v. Boerckel, 526 U.S. 838, 839 (1999)("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.").

In O'Sullivan, the Supreme Court stated: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly

_____

> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

presented his claims to the state courts[.]" 526 U.S. at 848 (internal citation omitted); see also id. at 844 ("Section 2254(c)[3] requires only that state prisoners give state courts a fair opportunity to act on their claims."). The question, then, is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has properly presented his claims to the state courts. Because we answer this question 'no,' we conclude that Boerckel has procedurally defaulted his claims." Id. at 848. In other words, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845. The Court noted, however, that:

> [N]othing in our decision today requires the exhaustion of any specific remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "the right under the law of the State to raise, by any available procedure, the question presented" (emphasis added). The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.

---

[3] Section 2254(c) states that: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Id. at 847-48.

The Supreme Court has further stated that it "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). The rule applies "whether the state law ground is substantive or procedural." Id. In such cases, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750.

"Cause" generally consists of "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Coleman, 501 U.S. at 75. For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable . . . ." Carrier, 477 U.S. at 488 (internal citations and quotation marks omitted). In order to demonstrate "prejudice," a petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494 (alteration

in original)(internal quotation marks omitted). Lastly, the "fundamental miscarriage of justice" exception applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Id. at 495-96. "To establish the requisite probability, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see also Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015)(quoting Schlup, 513 U.S. at 324)(noting that showing of actual innocence must be supported by "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial").

C.   Strickland

"The Sixth Amendment guarantees defendants the right to effective assistance of counsel." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993)(citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). However, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." Id. (quoting United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991)).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

> (1) that his counsel's performance fell below an objective standard of reasonableness; and
> (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland, 466 U.S. at 687-88, 694. In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010)(quoting Strickland, 466 U.S. at 690). With respect to the prejudice requirement under Strickland, a "reasonable probability is one sufficient to undermine confidence in the outcome." Id. (quoting Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001)(internal quotation marks omitted). In making the prejudice assessment, [the court] focus[es] on the fundamental fairness of the proceeding." Id. at 131-32 (internal citations and quotation marks omitted). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result

unreliable." Strickland, 466 U.S. at 687; see also Reyes-Vejerano
v. United States, 117 F. Supp. 2d 103, 106 (D.P.R. 2000)("The
petitioner has the burden of proving both prongs of this test, and
the burden is a heavy one."). "The benchmark for judging any claim
of ineffectiveness must be whether counsel's conduct so undermined
the proper functioning of the adversarial process that the trial
cannot be relied on as having produced a just result." Strickland,
466 U.S. at 686.

Strickland instructs that "[j]udicial scrutiny of counsel's
performance must be highly deferential." Id. at 689; see also id.
("It is all too tempting for a defendant to second-guess counsel's
assistance after conviction or adverse sentence, and it is all too
easy for a court, examining counsel's defense after it has proved
unsuccessful, to conclude that a particular act or omission of
counsel was unreasonable."). The court "must indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance; that is, the defendant must
overcome the presumption that, under the circumstances, the
challenged action 'might be considered sound trial strategy.'"
Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
Moreover, "[a]n error by counsel, even if professionally
unreasonable, does not warrant setting aside the judgment of a
criminal proceeding if the error had no effect on the judgment."

Id. at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

III. Discussion

Rivera presents sixteen grounds for the Court's review, including allegations of ineffective assistance of counsel, due process violations, and failures on the part of both the Superior Court and the Rhode Island Supreme Court. The State contends that three of Rivera's claims are unexhausted, six have been procedurally defaulted, and the remainder fail on the merits.

A.    Unexhausted claims

The State contends that three of Rivera's claims—Grounds Twelve, Thirteen and Sixteen—have not been raised in any of Rivera's submissions to the Rhode Island Supreme Court and, therefore, are unexhausted and cannot be litigated for the first time in a § 2254 petition. (Second Mot. to Dismiss 5.) Rivera maintains that it is "manifestly clear" that he "has exhausted his State Court remedy . . . ." (Opp. 2.) He further states that "[c]laims of actual innocence based evidence like that set forth

in Ground Thirteen, Twelve, and Sixteen ought to . . . survive."[4]
(Id. 26.)

Rivera argues in Ground Twelve that his post-conviction counsel failed "to present evidence and legal argument on all the named grounds of [his] state post-conviction petition and fail[ed] to adequately brief and argue [his] appeal from denial of post-conviction relief" (Pet.'s Att. 1 11), thereby rendering ineffective assistance of counsel. (Id.) Rivera additionally argues that:

> My post-conviction counsel obtained a statement from Hector Rodriguez wherein he recanted his trial testimony. My post-conviction counsel failed to present this new evidence in my post-conviction relief case. This failure further constituted constitutionally ineffective assistance of counsel pursuant to the Sixth Amendment and due process pursuant to the Fifth Amendment of the U.S. Constitution as applied to the States.

(Id. at 12.)[5] Rivera further asserts that:

---

[4] It is unclear whether Rivera is presenting "actual innocence" as a gateway to have an otherwise defaulted claim considered by the court or as a freestanding "actual innocence" claim. In either case, he has not met the criteria for demonstrating that a fundamental miscarriage of justice would occur were the Court to decline to consider the claim or the more demanding standard for a freestanding claim of actual innocence. See Schlup, 513 U.S. at 316.

[5] Rivera's post-conviction petition is not part of the record in this Court. However, there is no reference to new evidence regarding Hector Rodriguez in the trial court's oral decision. Rivera's initial appellate brief refers to a "Statement taken from Hector Vasquez in which he stated that he did not go to the Weiner Palace with any of the named parties in the State's assertion,"

[T]he result of the State PCR proceeding [is] so tainted
by the application of the wrong standard to counsels['] 
performance that it is patently unreliable and as such
renders equally unreliable the Rhode Island Supreme
Court's appellate findings.    The Supreme Court went
along    without    comment    with    the    Superior    Court's
standards based on . . . their prior case law. Therefore
the  Ground  12  should  survive  but  even  absent  that
analysis in the actual innocence context the claim ought
to be free standing in the federal court.

(Opp. 27-28.)[6]   The State contends that to the extent Ground 12

"allege[s] deficiencies with the Rhode Island Supreme Court's

determination  of  Petitioner's  post-conviction  appeal,  such

allegations, having not been previously raised in state court,

cannot be litigated for the first time in a § 2254 action." (Second

Mot. to Dismiss 5.)

    For the most part, the Court reads Ground 12 as alleging

deficiencies with post-conviction counsel's performance with

respect to the hearing and appeal.    As to alleged failure to

present evidence and argument on all grounds in Rivera's state

petition, as well as to present new evidence, during the hearing,

the State is correct that Rivera has not given the state courts an

opportunity to address any constitutional errors.    See Rose, 455

---

(State's Ex. 6 5), in the context of his conflict of interest
argument. (Id.)

    [6] The first portion of this argument will be discussed infra.
Regarding the reference to "the actual innocence context," see
n.4.

U.S. at 518; see also O'Sullivan, 526 U.S. at 845.  The same is
true with respect to Rivera's allegation regarding the inadequacy
of counsel's performance in his appeal from the denial of post-
conviction relief.  Rivera admits as much in the Petition, arguing
that "[t]hese issues arose as a result of counsel's performance in
the post-conviction relief hearing on the merits and the appeal of
the denial of relief." (Pet.'s Att. 1 13.)  He provides no evidence
that he has made any attempt to redress these issues in the state
courts.  Nor does Rivera argue that there is an absence of
available corrective process in the state courts or that any such
process would be ineffective to protect his rights.  See 28 U.S.C.
§ 2254(b)(1)(B).

Accordingly, the claims regarding post-conviction and post-
conviction appellate counsel are unexhausted and may not be
considered by this Court.  See id.

In Ground Thirteen, Rivera faults both the Superior Court and
trial counsel, alleging denial of his right to due process and to
effective assistance of counsel.  (Pet.'s Att. 1 13-14.)  He
states:

> Failure of the Superior Court to preclude testimony and
> grant a new trial where a witness having previously being
> informed of her obligation to appear  and testify by the
> court was  nevertheless  asked  just  prior  to  her
> appearance in court by the prosecutor that "There's no
> question you're scared about testifying, correct?"  To
> which she responded "yes."  The Court's failure to do so

> denied the defendant a fair trial under the due process
> clause of the United States Constitution.  Defendant[']s
> counsel similarly failed to object to the witnesses'
> [sic] testimony which constituted unconstitutional
> ineffective assistance of counsel.

(Id. at 13.)  The State contends that "Issue 13 does not appear to

have been raised in any of the appellate submissions Petitioner

tendered to the Rhode Island Supreme Court, either upon his direct

appeal or upon his post-conviction relief appeal." (Second Mot.

to Dismiss 5; see also id., Exs. 4, 6, 8.)

In his brief on direct appeal, Rivera stated that Cournoyer

"reluctantly" testified at trial.[7]  (State's Ex. 4 14.)  However,

---

[7] In a footnote, Rivera elaborated:

> On the first day of trial, Heather Cournoyer appeared
> before the court, out of the jury's presence, and told
> the court, "I'm not saying anything."  When asked why,
> the witness responded, "Because I don't.  Because I'm
> scared, and I don't want to.  I don't remember.  It's
> been too long."  The court, however, told her she was
> under a subpoena and must testify.  Right before her
> testimony the next day, the prosecutor, without
> objection being made, asked the witness, "There's no
> question you're scared about testifying, correct?"  The
> witness confirmed that she was – "I just – lot of
> questions, things people being calling me . . . I was
> getting threats from people talking; I don't know.  But
> I'm just scared."  The witness again reiterated that the
> incident was a long time ago.  However, she understood
> she was required to testify.

(State's Ex. 4 14 n.1)(internal citations omitted).  Where, as
here, there is a discrepancy in the page numbering of the original
document and the ECF pagination, the Court's citations refer to
the ECF page number.

the statement was made in Rivera's summary of the facts of the case (id. at 14), not as a separate ground for relief (id. at 8), or as part of his argument that the evidence did not support the verdicts (id. at 24-30). Rivera made no mention of Cournoyer's alleged fear or duress (Pet.'s Att. 1 15), in his post-conviction filings with the Rhode Island Supreme Court. (State's Exs. 6, 8.) Therefore, the Court does not discuss Rivera's allegations in Ground Thirteen.

Rivera argues in Ground Sixteen that he was denied due process due to prosecutorial misconduct and ineffective assistance of both trial and post-conviction counsel for failing to raise prosecutorial misconduct as a separate issue.[8] (Pet., Att. 1 19.) He states:

> The Petitioner was denied due process and a fair trial where the prosecutor wrongly introduced evidence, to wit, the pre-trial photo pack arrays, where the State prosecutor had knowledge that there were issues relevant to the legality and reliability of how the photo arrays were presented to the witnesses pre-trial, knew that they had not produced the original array with the numbering on the reverse side in discovery, and knew the police reports clearly showed that the Defendant/Petitioner was not identified on the night of the murder by the witnesses with reference to the packs as numbered.[] At trial, Defendant was pictured in photo pack 2, which was introduced at trial. The police reports clearly stated that the witnesses, when shown photo pack 2, were unable to identify the Defendant.

---

[8] As noted previously, Rivera's state post-conviction petition is not part of the record. See n.5

15

(Id.)

Rivera concedes that the "issue of prosecutorial misconduct was not raised on appeal from the conviction," but states that "the issue of the insufficiency of evidence presented and, specifically, the disturbing lack of reliability of the pre-trial identifications in the photo arrays was raised." (Id.)[9] Similarly, Rivera acknowledges that "[t]he issue of prosecutorial misconduct in presenting the evidence stated above was not raised," in his post-conviction relief action. Id. Again, however, he argues that the pretrial identification issue was raised during the post-conviction relief proceedings, as was trial counsel's failure to press the motion to suppress. (Id.) Further, Rivera states that "[i]n the context of actual innocence of the defendant where he was wrongly identified as the shooter, justice demands this court allow these claims to be heard." (Opp. 28.)[10]

_____

[9] Rivera further states that:

Ground[] 16 as stated is a subset to the entire photo pack/pre-trial identification issue and counsel's failings with respect to it. It is stated as a discovery violation and prosecutorial misconduct. The issue is brought as a subset of the failings of trial counsel to confront this issue in the motion to suppress . . . .

(Opp. 11.)

[10] See n.4. Simply stating that he was "wrongly identified" (Opp. 28), is not enough to demonstrate actual innocence.

Clearly Rivera's prosecutorial misconduct claim is unexhausted, along with the allegations of ineffective assistance of counsel based on failing to raise prosecutorial misconduct as a separate issue in the state court proceedings. Although related issues[11] were presented to the state courts, the courts were not given an opportunity to determine in the first instance whether Rivera's constitutional rights were violated by the prosecution. See Rose, 455 U.S. at 518.

Grounds Twelve, Thirteen, and Sixteen have not been "fairly presented" to the state courts and, therefore, cannot be raised in this Court. See Picard v. Connor, 404 U.S. 270, 275 (1971); cf. O'Sullivan, 526 U.S. at 848 (noting, in procedural default context, that federal habeas court asks "whether [a prisoner] has fairly presented his claims to the state courts"). Accordingly, Rivera's unexhausted claims are dismissed.

B.   Procedurally defaulted claims

The State also contends that Grounds Four through Seven, Ten, and Fifteen have been procedurally defaulted because they were not considered by the Rhode Island Supreme Court based on independent and adequate state procedural grounds. (Second Mot. to Dismiss

---

[11] Those issues will be discussed infra.

6.) Rivera counters that the claims are not procedurally barred, (Opp. 2), and argues that:

> The fact is that each of the claims brought in the PCR case were wrongly adjudicated and this Court should consider the findings in that action completely unreliable. Each of the claims brought there and acted upon or disregarded by the court require adjudication here to assure this defendant['s] federally recognized Sixth Amendment right to effective assistance of counsel.

(Id. at 8.) He further states that "[c]ertainly grounds 3, 4, 5, 15 are all part and parcel of that cohort of Grounds including the failure to attack the photo array evidence/pretrial identification evidence and all that were raised tog[]ether with 3, 11 and 14." (Id. at 11.) Rivera also argues that he sought to preserve the issues passed on by the post-conviction court for federal habeas review by filing a supplemental memorandum in support of his appeal of the denial of post-conviction relief. (Id. at 12; see also State's Ex. 8).

In Grounds Four, Five, and, to an extent, Fifteen, Rivera claims that trial counsel failed to conduct any investigation or pretrial preparation. (Pet. 12; Pet'r's Att. 1 1, 19.) Grounds Six and Ten focus on his attorneys' failure to preserve issues for appeal and to challenge evidence. (Pet'r's Att. 1 2-3, 9.) In Ground Seven, Rivera alleges that he received ineffective assistance of counsel based on counsels' failure to argue a motion

for speedy trial. (Id. at 4.) Rivera argues in Ground Fifteen that trial counsel were ineffective for failing to insist on production of the original photo arrays from which he was identified. (Id. at 19.)

Rivera originally presented seven grounds for post-conviction review in state court.[12] Rivera II, 58 A.3d at 174-75. In a subsequent filing, however, Rivera abandoned several of these claims. Id. at 175. According to the Rhode Island Supreme Court, Rivera stated that he "intended to press only four grounds of alleged ineffective assistance of counsel: that his attorneys were conflicted in their representation of him; that they failed to adequately investigate and prepare for trial; that they failed to pursue a motion to suppress; and that they failed to mount a third-party perpetrator defense." Id. The court found that only three grounds had been properly preserved for appellate review: that trial counsel labored under a conflict of interest; that they

---

[12] The seven grounds alleging ineffective assistance of counsel were:

(1) attorney conflict of interest; (2) failure to raise a third-party perpetrator defense; (3) failure to pursue a motion to suppress; (4) failure to investigate or conduct pretrial preparation; (5) failure to conduct pretrial investigation; (6) failure to raise a motion for a speedy trial; and (7) failure to preserve issues at trial.

Rivera v. State (Rivera II), 58 A.3d 171, 175 (R.I. 2013).

failed to pursue a motion to suppress; and that they failed to mount a third-party perpetrator defense. Id. at 178. The appellate court also found that Rivera had waived the following grounds: the adequacy of his attorneys' pretrial investigation and preparation; their failure to move for a speedy trial; and their failure to preserve certain issues for appeal. Id. (citing Wilkinson v. State Crime Lab. Comm'n, 788 A.2d 1129, 1131 n.1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.")).

As to the adequacy of pretrial investigation and preparation, the court found:

> At the postconviction-relief hearing, Rivera adduced testimony relevant to the adequacy of his attorneys' pretrial investigation and preparation. He did not, however, raise this issue during closing arguments at the hearing, and he did not object when the hearing justice did not discuss this issue when he rendered his bench decision. Accordingly, we deem that issue to be waived.

Id. at 178 n.6.

With respect to the alleged failure of trial counsel to preserve issues for appeal and challenge evidence, Rivera focuses primarily on ballistics questions. (Pet'r's Att. 1 2-3); (see also id. at 9-10). On direct appeal, as part of his contention

that the evidence was insufficient to sustain his conviction, Rivera attempted to raise arguments regarding the position of the victim's body and the trajectory of the bullets. State v. Rivera (Rivera I), 839 A.2d 497, 501 (R.I. 2003). The court stated:

> We decline to address defendant's argument about the position of the victim or the location of the entry wounds as grounds for exoneration. The state correctly contends that defendant failed to raise this issue as a basis for new trial in the Superior Court. Therefore, in accordance with our well-established rule, it cannot be raised for the first time on appeal.

Id. In his appeal of the denial of post-conviction relief, Rivera originally alleged that counsel failed to preserve issues at trial. See Rivera II, 58 A.3d at 175. However, as noted above, in a later filing Rivera "abandoned" this ground, id., and the Rhode Island Supreme Court found that he had waived the issue, id. at 178.

Similarly, the Rhode Island Supreme Court found that the ground that counsel were ineffective due to their failure to raise a speedy trial motion, although originally presented in Rivera's appeal of the Superior Court's decision denying post-conviction relief, had also been abandoned, see id. at 175, and thus deemed it waived, id. at 178.

Regarding Rivera's argument that counsels' "failure to insist upon obtaining production of the original photo arrays used for pre-trial identification prior to trial constituted constitutional ineffective assistance of counsel" (Pet'r's Att. 1 19), although

21

the contention is certainly related to issues respecting the alleged failure to investigate or conduct pretrial preparation and to the motion to suppress, the allegation does not appear to have been raised as a separate issue in the state courts. It was not argued in Rivera's state filings as such (see State's Exs. 6, 8), and, to the extent it formed part of the failure to conduct pretrial investigation and preparation claim, the Rhode Island Supreme Court found that Rivera had waived that issue, see Rivera II, 58 A.3d at 179.

The Rhode Island Supreme Court's finding that Rivera had waived the foregoing issues for the reasons stated above constitutes an independent and adequate state ground; the waiver finding is independent of Rivera's federal ineffective assistance claim, and it is adequate to support the state court's judgment. See Coleman, 501 U.S. at 729. Rivera has presented no evidence or argument that the state courts do not consistently enforce the waiver rule. Therefore, the Court does not address Grounds Four through Seven, Ten, and Fifteen because they were procedurally defaulted in the state courts and, therefore, cannot be raised in this Court.

C.   Remaining claims

Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d); <u>see also</u> <u>Hurtado v. Tucker</u>, 245 F.3d 7, 15

(1st Cir. 2001)("As amended by AEDPA,[13] § 2254 places a new

constraint on the power of a federal habeas court to grant a state

petitioner's application for a writ of habeas corpus with respect

to claims adjudicated on the merits in state court.")(internal

quotation marks omitted).

A state court decision can be "contrary to" clearly

established Supreme Court precedent in two ways. <u>Williams v.</u>

<u>Taylor</u>, 529 U.S.C. 362, 405 (2000). In <u>Williams</u>, the Supreme Court

explained:

> First, a state-court decision is contrary to this
> Court's precedent if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law.  Second, a state-court decision is also

---

[13] Antiterrorism and Effective Death Penalty Act.

23

contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Id. (citing Green v. French, 143 F.3d 865, 869-70 (4th Cir. 1998)); see also id. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410; see also Phoenix v. Matesanz, 233 F.3d 77, 80-81 (1st Cir. 2000)(discussing Supreme Court's explication of § 2254(d) in Williams). The court's inquiry is an objective one. See Williams, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."). "'[U]nreasonable' here means something more than incorrect or erroneous." Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007) (citing Williams, 529 U.S. at 411).

"The AEDPA also allows collateral relief in a quite different situation: when a federal habeas court determines that a state court adjudication 'resulted in a decision that was based on an

24

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001)(quoting 28 U.S.C. § 2254(d)(2)). The First Circuit has noted, however, that "these words cannot be read in a vacuum[.]" Id. Rather, "they must be interpreted in conjunction with a companion subsection specifying that 'a determination of a factual issue made by a State court shall be presumed to be correct,' and that 'the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Id. (quoting 28 U.S.C. § 2254(e)(1))(alteration in original). For purposes of § 2254(e)(1), "factual issues are defined as basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000)(internal citations and quotation marks omitted).

With this framework in mind, the Court turns to the merits of Rivera's remaining claims, albeit not in the order in which he presented them.[14]

---

[14] Where possible, the Court has grouped Rivera's claims in order to avoid unnecessary repetition.

1.    Sufficiency of the evidence (Ground Nine)

In addition to allegedly receiving ineffective assistance of counsel, which will be discussed _infra_, Rivera claims that he was denied a fair trial "because of the utter insufficiency of the evidence." (Pet'r's Att. 1 8.)  Specifically, he contends that there was insufficient evidence put forth to convict him of first degree murder.  (_Id._)

In _Jackson v. Virginia_, the U.S. Supreme Court held that:

> [I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

443 U.S. 307, 324 (1979); _see also_ _Cavazos v. Smith_, 565 U.S. 1, 2 (2011)(per curiam)("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.").  The _Jackson_ Court explained:

> After _Winship_[15] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to ask itself whether _it_ believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to

---

[15] _In re Winship_, 397 U.S. 358 (1970).

the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

<u>Id.</u> at 318-19 (footnote, internal citations, and quotation marks omitted); <u>see also</u> <u>Cavazos</u>, 565 U.S. at 2 (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010))("What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"); <u>Winfield v. O'Brien</u>, 775 F.3d 1, 8 (1st Cir. 2014)("[W]e do not ask, as we might on direct review of a conviction in federal court, whether the evidence was constitutionally sufficient. We ask, instead, whether the state courts' ruling that the evidence is constitutionally sufficient was itself 'unreasonable.'"). "'Unreasonable' in this context means that the decision 'evinces some increment of incorrectness beyond mere error.'" <u>Winfield</u>, 775 F.3d at 8 (quoting <u>Leftwich v. Maloney</u>, 532 F.3d 20, 23 (1st Cir. 2008)). Thus, habeas review "involves the layering of two standards. The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted." <u>Id.</u> at 8 (quoting <u>Hurtado</u>, 245 F.3d at 16).

In reviewing Rivera's appeal of his judgment of conviction and challenge to the lower court's denial of his motion for a new trial on direct appeal, the Rhode Island Supreme Court stated:

> [A] trial justice may grant [a] new-trial motion if, relying on his or her independent assessment of the weight and the credibility of the evidence, he or she determines that the verdict is against the preponderance of the evidence. The new-trial motion must be denied, however, if a trial justice agrees with the verdict or determines that reasonable minds could fairly come to different conclusions.

Rivera I, 839 A.2d at 502 (second alteration in original)(internal quotation marks and citations omitted); see also State v. Vorgvongsa, 670 A.2d 1250, 1255 (R.I. 1996)(concluding that direct and circumstantial evidence was "more than sufficient to permit a reasonable jury to conclude the guilt of the defendant beyond a reasonable doubt"). The Rhode Island Supreme Court did not mention Jackson. However, the First Circuit "ha[s] held that a state-court adjudication of an issue framed in terms of state law may receive section 2254(d)(1) deference so long as the state standard is at least as protective of the defendant's rights as the federal counterpart." Leftwich, 532 F.3d at 23-24; cf. Morgan v. Dickhaut, 677 F.3d 39, 49 (1st Cir. 2012)(quoting Leftwich and noting that Massachusetts Supreme Judicial Court had adopted sufficiency of evidence standard that "we have recognized as consistent with Jackson").

Rivera does not contend that the Rhode Island Supreme Court's decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). He initially states that he "does not allege the Rhode Island Supreme Court misapprehended the law in determining the credibility of Evans[16] (and denying relief) so much as it made an unreasonable determination of fact." (Opp. 31.) Rivera subsequently argues that "[t]he Rhode Island Supreme Court's decision on Petitioner's Motion for Acquittal and New Trial Motion was both an unreasonable application and unreasonable interpretation of the facts." (Id. 32-33.) Therefore, both subsections of § 2254(d) are implicated.

The Court begins with the facts. The Rhode Island Supreme Court summarized the evidence presented at trial as follows:

> In the early morning hours of November 23, 1997, the victim, Edward "Chipper" Wilson IV, and his friend Robert K. Rhoads arrived at the Weiner Palace in Woonsocket for a late night bite after an evening out. As they were conversing with two female employees and the owner of the establishment, defendant, nicknamed "Hippy," and three male friends entered the Weiner Palace. Although some derogatory comments were exchanged between members of each group of men, Wilson and his friend made an uneventful exit from the restaurant and headed back to their parked vehicle. Before he got to the vehicle, however, Wilson noticed defendant staring at him from the front window inside

---

[16] The reference to "Evans" is unclear. There is no mention of anyone named "Evans" in the Rhode Island Supreme Court's opinion. See Rivera I, 839 A.2d 497.

29

the Weiner Palace. Wilson, who was a martial arts instructor, challenged defendant to come outside. The defendant complied, and the two exchanged profanities and blows, resulting in defendant's being knocked to the pavement. At some point, defendant's friends also became involved in the scuffle. At trial, Rhoads testified that defendant pulled out a metal object and hit Wilson over the head with it. At this point Wilson fled down the hill in a direction away from the Weiner Palace. By several eyewitness accounts, Wilson was pursued by defendant. Shots were fired and Wilson was struck twice, once in the abdomen and once in the head, the wound that proved to be fatal.

Although no eyewitness could testify [to] seeing defendant fire the bullet that killed Wilson, the state presented several witnesses throughout the course of the six-day trial who testified to having seen defendant with a weapon and heading in the direction of where Wilson fled just before Wilson was shot. The two waitresses on shift at the Weiner Palace, Heather Cournoyer and Michelle Oliveira, gave consistent testimony about the events that unfolded that evening. Each testified that, from their vantage point inside the Weiner Palace, they had seen defendant pull out a gun, cock it, and walk in the direction of the victim. Each then heard what sounded like a thud and then a gunshot ring out in rapid succession. John Muniz, one of defendant's friends involved in the fight, told police that he saw defendant in possession of a gun and that he saw him pull it back and cock it as the victim fled. However, Muniz later recanted this version of events while testifying for the state. At trial he said that defendant had never had a gun and that it was only upon threats by police that he placed a gun in defendant's hands. Rhoads, Wilson's friend, testified that he saw defendant pointing a gun at Wilson, heard a gunshot, and saw his friend fall. Rhoads heard a second gunshot while running away. Michael Cote, a customer at the Weiner Palace, testified that although he never saw a weapon in defendant's hands, defendant was involved in a confrontation with Wilson, and that he heard a scuffle outside the restaurant, followed by two gunshots about fifteen seconds apart.

Evidence was presented at trial that positive identifications of defendant were made using a series of

photo packs shown to witnesses not more than a day after the shooting. Cournoyer, Oliveira, and Rhoads all selected defendant's photo from one of several photo packs. At trial almost two years after the incident, only Oliveira, among these three witnesses, was able to make a positive in-court identification of defendant. However, other witnesses, including three of his friends, were able to identify defendant at trial as the same man referred to as "Hippy." Rhoads and Cournoyer did not recognize defendant as the same man they had seen that night. All three witnesses, however, did testify that they were confident in their selection of defendant's photo at the time following the incident and that the man in the photo was the assailant. Furthermore, Cournoyer and three police sergeants involved in the case testified that defendant looked significantly different at trial than he did at the time of the crime. These physical changes included a gain in weight, a haircut, shave of facial hair, and the addition of glasses.

In addition to the abovementioned witnesses, the state presented additional evidence of suspicious behavior by defendant in the hours following the murder. Wanda Vasquez, a friend of defendant, testified that defendant asked her on the morning after the murder to care for a dog in his care because he had to go out. Hector Rodriguez, another friend, testified that he gave defendant a ride to Providence later that day so that defendant could "get out of Woonsocket." Finally, evidence was presented to establish that Maribel Albino, the sister of defendant's then-girlfriend, told police that on the evening after the murder, defendant told her he had been in a fight with a white man and that he spoke of going to a hotel. However, she recanted this story on the stand.

Rivera I, 839 A.2d at 499-500 (footnote omitted).

Based on the above evidence, the Rhode Island Supreme Court concluded:

Upon review of the record in this case, it is apparent that the trial justice did not err in denying defendant's motion for a new trial. He acknowledged that he made

31

his decision upon independently weighing the evidence and considering the testimony and credibility of the witnesses. To that effect, he referred specifically to the facts and testimony upon which he relied. With regard to the identification of defendant, the trial justice said that "[a]s to Oliveira and Cournoyer, they satisfactorily * * * identified this defendant as the culprit with the firearm." Furthermore, the trial justice noted that Rhoads's inability to make an in-court identification in no way diminished or dispelled his earlier out-of-court identification using a photo pack in which he picked out defendant's picture. With respect to the issue of premedition, the trial justice noted that Oliveira and Cournoyer both saw defendant pull out a handgun, cock it, and set out in the direction where Wilson had fled. The trial justice regarded as truthful a similar statement that Muniz made to the police, and he rejected as not truthful Muniz's subsequent change of story while testifying at trial. Additionally, the trial justice addressed the issue of premedition by saying that, based on the entry point of the second bullet as the medical examiner testified to,[17] and the evidence that defendant was armed with a gun while pursuing the victim, he believed the murder to have been "an execution which bespeaks first degree murder." Finally, the trial justice said that "the State produced in my mind credible and substantial evidence that this defendant did, in fact, commit first degree

---

[17] Here, the Rhode Island Supreme Court included a footnote in which it noted:

[T]he trial justice's reference to the medical testimony was made in an effort to address the issue of premedition, insofar as the victim's position on his knees after having been shot once in the abdomen rendered him effectively helpless and at defendant's mercy. The medical testimony was not used for the purpose of addressing the issue of the unlikelhood that defendant could have fired shots to the front of the victim while pursuing him from behind; medical testimony used for this purpose has been waived by defendant for failure to raise the issue in the first instance.

Rivera I, 839 A.2d at 504 n.7.

murder and all of the other offenses for which he was charged; that proof was easily to the level of beyond a reasonable doubt. And the jury, in my view, quite properly made the correct decision * * *." To our mind, the trial justice conducted a proper and thorough analysis of the evidence before him. Only after making his own independent assessment did he agree with the jury's verdict and deny the defendant's motion. Because the trial justice agreed with the verdict, his analysis need not have extended beyond that which it did. Because we hold that the trial justice neither misconceived nor overlooked material evidence, nor was he otherwise clearly wrong, we defer to his factual findings and his judgment. For these reasons, we disagree with the defendant's allegations of error. Accordingly, we affirm the judgment of the Superior Court.

Id. at 503-04 (alterations other than footnote in original).

Just as the Rhode Island Supreme Court deferred to the trial court's factual findings, id. at 504, this Court must defer to the state court on issues of fact. See 28 U.S.C. § 2254(e)(1); Teti, 507 F.3d at 58 ("The presumption of correctness is equally applicable when a state appellate court, as opposed to a trial court, makes the finding of fact.") (internal quotation marks omitted). This includes the state courts' credibility findings, which are considered factual findings for purposes of § 2254(e)(1). See Teti, 507 F.3d at 59 (noting that state trial judge's credibility determinations "are exactly the type of factual determinations to which [federal courts] defer, at least short of any indication of serious error"). Further, "a federal habeas corpus court faced with a record of historical facts that supports

33

conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

Rivera has not met his burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). On the contrary, he relies on the same arguments and evidence presented to—and rejected by—the Rhode Island Supreme Court. (Opp. 29-33; State's Ex. 4 21-23, 24-30); see also Rivera I, 839 A.2d at 500-01. This approach falls short of providing the clear and convincing evidence necessary to demonstrate that the state court's findings of fact were clearly erroneous. See Teti, 507 F.3d at 59 ("[Petitioner] does not attempt to argue that he has clear and convincing evidence to overcome the presumption here. Instead he tries to refute the [appellate court's] factual determinations by employing the same documents already considered by the state courts. That approach fails."). Based on the foregoing, the Court concludes that the Rhode Island Supreme Court's adjudication of Rivera's claim did not "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), and was not "objectively unreasonable," Hurtado, 245 F.3d at 16.

Nor can it be said that the state supreme court unreasonably applied clearly established federal law to the facts of the case. 28 U.S.C. § 2254(d)(1). There is no dispute that the "clearly established federal law" in this case is the Jackson standard. (Opp. 31) ("Sufficiency of the evidence already on the record is analyzed under the standard set forth in Jackson v. Virginia."). Rivera argues, however, that the Rhode Island Supreme Court's application of that standard was unreasonable. (Id. at 32-33.) He states that "the inability of witnesses to make in court identifications and the troubling recantations coupled with the troubling photo pac[k]s, trajectory of the bullets from directions where the Petitioner was not located, [and a] witness testifying under apparent fear or duress manifestly demonstrated the sufficiency finding requires review by this court." (Opp. 33.)[18]

Rivera overlooks the fact that the purpose of habeas review is not to relitigate state trials, see Sanna, 265 F.3d at 15, or

---

[18] The identification and photo pack issues were presented to the Rhode Island Supreme Court. See Rivera I, 839 A.2d at 500-01. The recantations, although not raised as separate issues in Rivera's brief (State's Ex. 4), were addressed by the court, see Rivera I, 839 A.2d at 500, which made a specific credibility finding as to one of the witnesses, see id. at 503-04. Also not raised as a separate issue, but mentioned in a footnote in Rivera's brief on appeal, was the witness testifying under fear or duress. (State's Ex. 4 14 n.1.) As noted previously, the appellate court found that Rivera had waived his argument regarding the trajectory of the bullet. Rivera I, 839 A.2d at 501.

to serve as a substitute for direct appeals, see <u>Winfield</u>, 775 F.3d at 8. Rather, the function of a federal habeas court is limited. <u>Sanna</u>, 265 F.3d at 15. Thus, as noted above, this Court does not weigh the sufficiency of the evidence; instead, its role is to determine "whether the state courts' ruling that the evidence [was] constitutionally sufficient was itself unreasonable." <u>Winfield</u>, 775 F.3d at 8 (internal quotation marks omitted). The Court concludes that the Rhode Island Supreme Court's decision affirming the lower court's denial of Rivera's motion for new trial was not "objectively unreasonable." <u>Williams</u>, 529 U.S. at 409.

It is clear from the evidence summarized by the Rhode Island Supreme Court that the state court's determination of the facts was not "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). It is also clear from the foregoing that the state courts' analysis did not "result[] in a decision that . . . involved an unreasonable application of[] clearly established Federal law[.]" <u>Id.</u> § 2254(d)(1). Accordingly, the Court rejects Rivera's challenge to the sufficiency of the evidence supporting his conviction.

2. Application of standard of review to ineffective assistance of counsel claims (Ground One)

Rivera claims that both the Superior Court on post-conviction review and the Supreme Court in reviewing the denial of Rivera's

post-conviction petition applied the wrong standard of review to his ineffective assistance of counsel claims. (Pet. 6.) Specifically, he contends that the state courts utilized a more demanding "farce and mockery" standard instead of the standard articulated by the Supreme Court in Strickland. (Id.; Opp. 2-4.) Rivera further asserts that the courts applied a higher standard because he had privately retained, not appointed, counsel. (Pet. 6; Opp. 3.)

Rivera argues that:

In Rhode Island the Rhode Island Supreme Court's jurisprudence on the standard to be applied in a case claiming ineffective assistance of counsel has become a distinct and more deman[d]ing standard, than that articulated by the United Stat[e]s Supreme Court, and especially so where the defendant is represented by private cou[ns]el. Rhode Island jurisprudence continues to apply a long-discarded pre-Strickland standard formerly pronounced pursuant to The Due Process c[la]use, namely the farce and mockery standard. The Rhode Island Supreme Court commingled the more demanding standard, with the subsequent Sixth Amendment Strickland standard, and thus unconstitutionally diminishes the defendant's Sixth Amendment right to effective assistance of counsel.

(Pet. 6.)

As Rivera recognizes, both the post-conviction court and the Rhode Island Supreme Court correctly articulated the Strickland standard. (See Opp. 2, 4.) It is true that the post-conviction court also mentioned "farce and mockery" and differential treatment with respect to retained, as opposed to appointed,

counsel. (Id., Ex. A 1-2.) It is clear, however, from a close reading of the courts' opinions that they applied the proper standard of review—that is, the Strickland standard— to Rivera's ineffective assistance of counsel claims

The post-conviction court began its discussion of Rivera's ineffective assistance of counsel allegations by stating:

> In matters such as these for postconviction relief, at bottom on the claim of ineffective assistance of counsel, certain general propositions obtain. The touchstone, of course, relates to the Strickland case adopted by our Court as well. In Powers [v]s. Rhode Island (1999), reflecting on Strickland, our court said "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Secondly, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable."

(Id., Ex. A 1.) The court also quoted the Court of Appeals for the First Circuit's decision in United States v. Theodore, 468 F.3d 52, 57 (1st Cir. 2006), which noted a "'very forgiving' Sixth Amendment standard for ineffective assistance of counsel." (Opp., Ex. A 2.)

The court continued:

> There exists a strong presumption in favor of competent representation on behalf of a defendant. Indeed, with respect to a defendant's lawyer or lawyers who are privately retained, our Supreme Court has said on more than one occasion -- and I cite Vorgvongsa, 785 A.2d

38

542, page 549 (2001) as an example, where the Supreme
Court noted that a claim of ineffective assistance of
counsel against a privately retained defense attorney is
generally not viable "unless the attorney's
representation was so lacking that the trial had become
a farce and a mockery of justice," quoting our Supreme
Court's earlier case of <u>Dunn</u>, 726 A.2d 1142, 1146,
footnote 4, (1999 R.I.)[.]

(<u>Id.</u> at 1-2.)  That is the only reference to "farce and mockery"

in the trial court's opinion.  Although Rivera relies heavily on

this statement, the mere mention of "farce and mockery" does not

equate to application of it.

For example, with reference to the motion to suppress issue,

after discussing counsel's testimony regarding trial strategy, the

post-conviction court concluded: "So, with respect to the motion

to suppress, the first prong of <u>Strickland</u> clearly is not violated,

and there has been an utter failure to carry the burden of proof

with regard to that claim."  (<u>Id.</u> at 4-5.)  Similarly, the court

addressed Rivera's claim that his defense attorneys were "less

than diligent" by not pursuing a third-party culprit defense (<u>id.</u>

at 5), under the <u>Strickland</u> standard (<u>id.</u> at 8)("[I]f counsel's

strategy, given the evidence bearing on the defendant's guilt,

satisfies the <u>Strickland</u> standard, that is the end of the

matter.").  Finally, turning to Rivera's conflict of interest

claim, the post-conviction court cited numerous Rhode Island

Supreme Court cases which accurately explained the U.S. Supreme

Court's standard for demonstrating a conflict of interest. (Id. at 9-10.) The court found that Rivera's counsel did not "struggle to serve two clients" (id. at 10), that Rivera had not carried his burden of demonstrating that they did (id. at 11), and that "under no circumstances were they in any way near the Strickland standard of being ineffective" (id.).

On appeal, the Rhode Island Supreme Court also correctly stated the Strickland standard of review for ineffective assistance of counsel claims. Rivera II, 58 A.3d at 179 ("When evaluating claims of ineffective assistance of counsel, this Court employs the test set forth in Strickland v. Washington."). The court described the Strickland test as the lower court did, id., indicated that "[u]nless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable," id. (quoting Pelletier v. State, 966 A.2d 1237, 1241 (R.I. 2009))(alteration in original), and noted the "strong presumption * * * that an attorney's performance falls within the range of reasonable professional assistance and sound trial strategy. Id. at 180 (alterations in original).

Rivera acknowledges that the Rhode Island Supreme Court did not address the farce and mockery standard. (Opp. 4)("[T]he Court does not speak to the erroneous standards that the trial court

applied . . . .").  Rivera nonetheless faults the court for "allow[ing] to stand the PCR court's holding though it was arrived at through the wrong standards, and went on to accept those findings as its own under a completely different standard"[19] (id. at 2), i.e., the Strickland standard.  Although the Rhode Island Supreme Court afforded deference to the post-conviction court's findings, see Rivera II, 58 A.3d at 180-81, it applied the proper standard in its evaluation of those conclusions, see, e.g., id. at 181 (agreeing with the trial justice's finding, with respect to the motion to suppress, that "the first prong of Strickland clearly [was] not violated, and there [had] been an utter failure to carry the burden of proof with regard to that claim.")(alterations in original).

The Rhode Island state courts did not apply an improper standard to Rivera's ineffective assistance of counsel claims. Even if the post-conviction court had utilized the farce and mockery standard, which it did not, the Rhode Island Supreme Court applied the proper Strickland standard in evaluating the lower

---

[19] Despite appearing to concede that the Rhode Island Supreme Court utilized the Strickland standard (Opp. 2), Rivera states in the Petition that the appellate court "commingled the more demanding standard, with the subsequent Sixth Amendment Strickland standard . . . ." (Pet. 6.)  There is no indication in the Rhode Island Supreme Court's opinion, however, that it applied anything other than the Strickland standard.

41

court's findings.  See Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015)(noting that, under AEDPA, the "last reasoned state-court decision must be not only erroneous but also contrary to, or infected by an unreasonable application of, clearly established Federal law . . . .")(internal quotation marks omitted).

Accordingly, Rivera's first ground provides no basis for relief.

### 3.  Conflict of interest (Grounds Two and Eight)

Rivera alleges that his trial counsel labored under an actual conflict of interest, adversely affecting counsels' performance, undermining the adversarial process, and depriving him of effective assistance of counsel.  (Pet., Att. 1 5-6.) He further contends that counsel "failed to follow proper procedure in notifying the court" (id. 7), and that the court failed to inquire into the claimed conflict (id.).  Rivera also argues that, as a result of this alleged conflict, counsel failed to raise a "third party culprit" defense.  (Pet. 8.)

Claims of attorney conflict of interest are evaluated under the Strickland standard.  See Strickland, 466 U.S. at 692.  Rivera argues that the decisions of the Rhode Island Superior and Supreme Courts on post-conviction review and appeal of the denial thereof were "contrary to, or involve[d] an unreasonable application, of clearly established Federal Law, as determined by the Supreme Court

42

of the United States." (Opp. 26) (quoting 28 U.S.C. § 2254(d)(1)) (citation and internal quotation marks omitted). On habeas review, however, this Court is "not actually tasked with deciding whether [petitioner's] counsel's performance fell short of *Strickland's* requirements; rather, the 'pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.'" *Hensley v. Roden*, 755 F.3d 724, 736 (1st Cir. 2014)(quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see also Harrington*, 562 U.S. at 101 ("This is different from asking whether defense counsel's performance fell below *Strickland's* standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.")(internal citation and quotation marks omitted).

"In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of

interest adversely affected his lawyer's performance." <u>Cuyler v.</u>
<u>Sullivan</u>, 446 U.S. 335, 350 (1980). In such situations, prejudice
under <u>Strickland</u>'s second prong is presumed. <u>Strickland</u>, 446 U.S.
at 692; <u>Sullivan</u>, 466 U.S. at 349-50 ("Thus, a defendant who shows
that a conflict of interest actually affected the adequacy of his
representation need not demonstrate prejudice to obtain relief.").
However, the mere "possibility of conflict is insufficient to
impugn a criminal conviction." <u>Sullivan</u>, 466 U.S. at 350. Rather,
"until a defendant shows that his counsel actively represented
conflicting interests, he has not established the constitutional
predicate for his claim of ineffective assistance." <u>Id.</u>

   "Defense counsel have an ethical obligation to avoid
conflicting representations and to advise the court promptly when
a conflict of interest arises during the course of trial." <u>Id.</u>
However, the Supreme Court has "deferred to the judgment of counsel
regarding the existence of a disabling conflict, recognizing that
a defense attorney is in the best position to determine when a
conflict exists, that he has an ethical obligation to advise the
court of any problem, and that his declarations [as an officer of
the court] to the court are 'virtually made under oath.'" <u>Mickens</u>
<u>v. Taylor</u>, 535 U.S. 162, 167-68 (2002)(quoting <u>Holloway v.</u>
<u>Arkansas</u>, 435 U.S. 475, 485-86 (1978)); <u>see also</u> <u>Sullivan</u>, 466

U.S. at 347 (noting that "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel").

"Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." Sullivan, 466 U.S. at 346-47. It follows that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Id. at 347; see also Mickens, 535 U.S. at 168-69 ("Sullivan addressed separately a trial court's duty to inquire into the propriety of a multiple representation, construing Holloway to require inquiry only when the trial court knows or reasonably should know that a particular conflict exists—which is not to be confused with when the trial court is aware of a vague, unspecific possibility of conflict, such as that which inheres in almost every instance of multiple representation.")(internal citation and quotation marks omitted).

Rivera argues that:

Mr. Rivera was represented by attorneys Matthew Smith and John Verdecchia. Both attorneys also represented Mr. Hector Vasquez, who was the initial suspect in the murder investigation. On the night of the murder, November 23, 1997, Vasquez made a statement at Woonsocket Police Department, with his attorney present, Mr. Verdecchia. On January 7, 1998, Mr. Smith opened his file of Mr. Rivera's murder indictment and the retainer was signed on that date. Both attorneys had

45

conflicts of interests, as they both represented Mr.
Rivera and Mr. Vasquez.[20]

(Pet., Att. 1 5; see also Opp., Ex. B). Rivera states that neither

attorney informed him of this issue. (Pet., Att. 1 6.)

Regarding the alleged conflict of interest, the post-
conviction court first summarized caselaw from both the United
States and Rhode Island Supreme Courts and, in particular, noted
that the U.S. Supreme Court "has emphasized that an actual conflict
of interest is one that requires that an attorney struggle to serve
two masters . . . . Until a defendant shows that his counsel
actively represented conflicting interests, he has not established
the constitutional predicate for his claim of ineffective
assistance." (Opp., Ex. A 9-10) (alteration in original)(internal
quotation marks omitted).

The court concluded:

> It's clear to me that by no elastic stretch of the most
> fertile imagination did Matthew Smith or John Verdecchia
> in any way struggle to serve two clients. Nor did they
> actively represent conflicting interests. Any prior
> representation of Vazquez had concluded by resolution,
> either plea or admission, long before the defendant's
> trial, in excess of a year.

(Id. 10.)

---

[20] Rivera acknowledges that counsel represented Vasquez in
different cases (Pet., Att. 1 6), specifically an unrelated
probation violation proceeding (Opp., Ex. 2), and a federal
narcotics charge, see CR No. 98-01-L. Rivera and Vasquez were not
co-defendants in the instant matter.

The Rhode Island Supreme Court, in affirming the denial of post-conviction relief, also discussed the relevant precedent for conflict claims.  Rivera II, 58 A.3d at 180 (citing cases).  It then quoted the lower court's factual findings and determined that:

> Our precedent requires us to presume that Smith and Verdecchia were capable of correctly analyzing whether a conflict might result from their representation of both Rivera and Vasquez.  Affording the hearing justice's findings deference, as we must, we cannot say that he erred in concluding that Rivera had not carried his burden of proof in this regard.

Id.

Both state courts also addressed Rivera's claim that counsel failed to raise a "third party culprit" defense as a result of their "representational relationship" with Vasquez.  (Pet. 8.) According to Rivera:

> Notwithstanding the fact that Mr. Vasquez was the initial suspect in the murder investigation and was identified in the photo array as being present at the murder, Counsel never offered Mr. Vasquez or anyone else as an alternative suspect at trial.  Defense Counsel could not raise Mr. Vasquez as an alternative suspect because they were also representing his interests at trial and trying to protect him from prosecution.

(Id.); see also Holloway, 435 U.S. at 490 (emphasizing that "in a case of joint representation of conflicting interests the evil . . . is in what the advocate finds himself compelled to refrain from doing").  The post-conviction court rejected the claim, stating:

> [I]t is uncontradicted that it was the defendant Rivera
> who had the physical altercation with Mr. Wilson, not
> Hector Vazquez. Indeed, yesterday, Dwight Withee
> indicated he and Hector ran away together when they heard
> the gunshots. Several people looked at the photographs.
> Not one person ever picked out Vazquez. The only one
> who was selected was the defendant Rivera. To be sure,
> two years later, at trial, the in-court identifications
> were not as solid, but, as the Supreme Court indicated
> in the direct appeal of Mr. Rivera, the passage of time
> -- almost two years had gone by -- played a part in that
> identification problem at trial.
>
> . . . .
>
> The defense counsel, as Mr. Verdecchia did testify
> yesterday, considered a theory of a third-party culprit,
> other than the defendant, who had killed Wilson, but he
> and Mr. Smith abandoned that avenue in the face of the
> evidence that they knew would confront them. They
> rightly decided that it was not a viable theory of
> defense. That decision, I find from the evidence before
> me, and from the record at trial, was a sound one. At
> best, all they had with respect to Hector Vazquez was
> his mere presence. And that, of course, was insufficient
> to mount some sort of third-party culprit
> defense. . . .

(Opp., Ex. A 6-7.) The court subsequently added: "As set forth

earlier, Hector Vazquez was never a viable target to assign guilt

in this case as a so-called third-party culprit anyway. Indeed,

Rivera himself, according to the record before me, never even

suggested that Vazquez should be blamed for the event." (Id. at

10.)

Addressing counsels' tactical decisions, the Rhode Island

Supreme Court similarly "defer[ed] to the hearing justice's

findings of historical fact regarding trial counsels' decision not

48

to mount a third-party perpetrator defense." Rivera II, 58 A.3d at 181. The court stated that, in the context of an ineffective assistance of counsel allegation, the issue was "whether trial counsel should have pursued such a defense." Id. It noted that "both attorneys testified—and the hearing justice agreed—that a third-party perpetrator defense was not supported by either discovery or their own investigation of the case." Id. After quoting the post-conviction court's finding that counsel had insufficient evidence to mount a third party culprit defense, the court concluded that "[w]e discern no error with the hearing justice's findings on this issue, and therefore hold that Rivera's attorneys did not render ineffective assistance of counsel by choosing not to mount a third-party perpetrator defense." Id. at 182.

The Supreme Court has emphasized the "wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. at 689; see also Phoenix, 233 F.3d at 84 ("Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies."); Lema, 987 F.2d at 55 ("Counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact

49

and of the realities of proof, procedure, and trial tactics.")(citation omitted); <u>United States v. Natanel</u>, 938 F.2d 302, 310 (1st Cir. 1991) ("That counsel's selection of a stratagem may, in retrospect, have proved unsuccessful, or even unwise, is not the issue."). Here, the state courts found that Rivera's trial counsel made a strategic decision not to raise a third-party culprit defense. Rivera has provided this Court with no basis to disturb that conclusion.

"Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254 are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Harrington</u>, 562 U.S. at 105 (internal citations and quotation marks omitted); <u>see also</u> <u>Hensley</u>, 755 F.3d at 736 ("The defendant's burden is a heavy one, and an ineffective assistance of counsel showing is not an easy one to make given [a habeas court's] deferential review.")(internal citation omitted). Rivera has failed to demonstrate that the state courts' conclusion that his attorneys did not actively represent conflicting interests was an incorrect or unreasonable application of clearly established federal law to the facts of the case. <u>See</u> 28 U.S.C. § 2254(d)(1). Nor can the

Court fault the state courts' finding that counsels' decision not to pursue a third-party culprit defense was based on strategy and not on a purported conflict. Accordingly, Rivera's claims of error based on conflict of interest are rejected.

4. Motion to Suppress Identification (Grounds Three, Eleven, Fourteen)

Rivera's remaining claims that he received ineffective assistance of counsel—Grounds Three, Eleven, and Fourteen—all relate to a motion to suppress identification, specifically through photo arrays presented to certain witnesses. (Pet. 10; id., Att. 1 11, 16-17.) In Ground Three, Rivera faults trial counsel for failing to litigate a motion to suppress identification, which was filed but never argued.[21] (Pet. 10.) Rivera also alleges in Ground Eleven that the Superior Court's failure to conduct a hearing on his motion to suppress identification evidence denied him a fair trial in violation of his right to due process. (Pet., Att. 1 11.) Finally, in Ground Fourteen, Rivera again contends that counsel were ineffective for failing to argue the motion to suppress, or to attempt to schedule a hearing on it, and the trial court's failure to hold a hearing

---

[21] To the extent Rivera alleges that the failure of counsel to litigate the motion to suppress was the result of inadequate pretrial investigation and preparation (Pet. 10), as noted above the Rhode Island Supreme Court found that Rivera had waived that issue, Rivera II, 58 A.3d at 178.

on the motion or to rule on it violated his due process rights. (Id. at 16-17.) Because Rivera argued the motion to suppress issue in the state courts solely as an ineffective assistance of counsel claim, the Court addresses it from that perspective only.

According to Rivera, "[t]here were issues with the way the photos were set up, procedural issues, and there were numbers on the back of the photo packs, which did not match Mr. Rivera being picked out in the photos." (Id. at 16.) Thus, in Rivera's view, the evidence was tainted and should not have been admitted. (Id.)

The post-conviction court stated:

> We know that with respect to motions to suppress identification, particularly through photo spreads, first, the photo pack itself must be inherently suggestive, and, even if it had not been, secondly, there had to have been activity by the police that may have suggested the selection of a photograph.
> There was nothing suggestive about the photo spreads. I've looked at them. They were presented yesterday. Nothing inherently suggestive. Then the question became did the police officer do anything that was suggestive? Nothing in the record supports that. Both attorneys yesterday testified that they inspected the photo packs and that they were of the view that a motion to suppress identification would not be successful. I wholeheartedly agree.
> Furthermore, the decision not to pursue the motion to suppress identification was clearly, as set forth yesterday by counsel, a trial strategy. Apparently, during the course of inspecting the evidence and the photo packs . . . defense counsel recognized prior to trial that there was some irregularity with regard to the photo spreads and that, had they pursued a motion to suppress, they would have given the State, particularly the Woonsocket Police, an opportunity to meet that kind of inquiry at trial such that whatever mileage the

defense attorney might have been able to make of it would have been diminished, watered down, defused, if you will, at trial, because they would have tipped their hand early on, and the Woonsocket Police witnesses would have been able to counter, impairing that kind of examination. So, defense counsel decided to keep it to themselves and loose that arrow from their quiver during trial, and they did so rather successfully. They made hay out of that issue, and, frankly, it was not the best day that the Woonsocket Police had when it came to that particular moment. They were, in all likelihood, somewhat embarrassed.

So, with respect to the motion to suppress, the first prong of <u>Strickland</u> clearly is not violated, and there has been an utter failure to carry the burden of proof with regard to that claim.

(Opp., Ex. A 3-5.) Accordingly, the court rejected Rivera's claim.

(<u>Id.</u> at 11.)

On appeal of the denial of post-conviction relief, the Rhode Island Supreme Court first summarized counsels' testimony:

As for their decision not to pursue a motion to suppress evidence, Smith and Verdecchia both testified that they felt the motion would be futile for two reasons. First, they agreed that there was nothing inherently suggestive about the photo arrays that would provide grounds for a motion to suppress. Second, they believed it would be better to highlight some irregularities with the photo arrays through cross-examination at trial rather than "tip[] [their] hand" at a suppression hearing . . .

<u>Rivera II</u>, 58 A.3d at 177[22] (alterations in original). The court then turned to the decision below:

_____

[22] The appellate court also noted Verdecchia's testimony that, although counsel initially filed the motion to suppress "out of an abundance of caution," <u>Rivera II</u>, 58 A.3d at 177, they ultimately concluded that such a motion would likely fail and that any

53

As for Rivera's contention that his trial counsel were
ineffective in failing to pursue a motion to suppress,
the hearing justice noted that there was "nothing
suggestive" about the photo arrays that were introduced
into evidence at trial. Crediting Smith's and
Verdecchia's testimony, the hearing justice concluded
that trial counsel had made a prudent tactical decision
not to pursue the motion to suppress. He noted that
Rivera's attorneys were "rather successful[]" in
exposing irregularities with the photo arrays at trial
and that the Woonsocket police probably were "somewhat
embarrassed" as a result.

Id. at 178 (alterations in original). After noting "the deference

[it] must afford to the hearing justice's findings of historical

fact," id. at 181, the court concluded that the tactical decision

made by counsel did not constitute constitutionally deficient

representation, id.

First, concerning the motion to suppress, we discern no
error in the hearing justice's finding that there was
"nothing suggestive" about the photo arrays.
Furthermore, the hearing justice credited the testimony
of Smith and Verdecchia, who explained that they had
made a strategic choice to expose irregularities with
the photo arrays as they were presented at trial rather
than at a suppression hearing. The hearing justice found
that "the first prong of Strickland clearly [was] not
violated, and there [had] been an utter failure to carry
the burden of proof with regard to that claim." We
agree, and therefore hold that Rivera's attorneys did
not render ineffective assistance of counsel in choosing
not to pursue a motion to suppress evidence.

Id. (alterations in original).

---

irregularities in the photo packs "would go to the weight, as
opposed to the admissibility" of the photo packs, id.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Phoenix, 233 F.3d at 84 ("The mere fact that [counsel's] cross-examination failed to persuade the jury of [defendant's] innocence is not enough to establish ineffective assistance."). "While [counsels'] trial tactics may appear dubious to the petitioner in hindsight, especially in the grim reflection of the intervening convictions, the reviewing court must be persuaded that the failed trial strategy was not within the 'wide range of reasonable professional assistance' contemplated by Strickland." Lema, 987 F.2d at 56; see also Strickland, 466 U.S. at 689 (noting court's obligation "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). The state courts were not so persuaded. This Court is not persuaded that the state courts' determination was objectively unreasonable. See Hensley, 755 F.3d at 736; see also Yarborough, 540 U.S. at 5.

Rivera has not demonstrated that the Rhode Island state courts' rejection of his ineffective assistance of counsel claim based on counsels' failure to pursue a motion to suppress was objectively unreasonable. Therefore, federal habeas relief is precluded. See Hensley, 755 F.3d at 731 (quoting Harrington, 562

U.S. at 101)("A 'state court's determination that a claim lacks merit precludes habeas federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'"). Accordingly, Grounds Three, Eleven, and Fourteen are baseless.

IV.  Summary

To summarize, the Court has ruled as follows: Grounds Twelve, Thirteen, and Sixteen are dismissed as unexhausted. Grounds Four, Five, Six, Seven, Ten, and Fifteen have been procedurally defaulted and are also dismissed. Grounds One, Two, Three, Eight, Nine, Eleven, and Fourteen are denied on the merits. The Petition is, therefore, denied and dismissed, and the Second Motion to dismiss is granted.

V.  Conclusion

Based on the foregoing, the Second Motion to Dismiss (ECF No. 19) is GRANTED and the Petition (ECF No. 1) is DENIED and DISMISSED.[23]

RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts, this Court hereby

---

[23] Based on the Court's ruling above, it need not revisit the issue of timeliness or address Rivera's equitable tolling argument.

finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because Rivera has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Rivera is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> Rule 11(a), Rules Governing Section 2254 Proceedings.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date: August 10, 2018